Filed April 19, 1884.

---

No. 11,601.

## NORRIS v. THE STATE.

95　　73
f157 204

BLACKMAILING.—*Criminal Intent.—Evidence.*—Indictment for violation of section 1926, R. S. 1881, by sending a threatening letter to C. to extort money. The evidence of guilt was not conclusive. The defence was that the letter was sent as a joke. The defendant and C. were intimate friends, and there was evidence tending to prove the defence, and especially establishing his good character. He offered to prove that shortly before this transaction C. had perpetrated several severe jokes (stated) upon the defendant, but was not permitted.
*Held*, that the evidence was admissible upon the question of intent.

From the Lagrange Circuit Court.

*O. L. Ballou* and *J. D. Ferrall*, for appellant.

*F. T. Hord*, Attorney General, *F. D. Merritt*, Prosecuting Attorney, and *J. S. Drake*, for the State.

HAMMOND, J.—The appellant and one Lucius Vedder were jointly indicted for blackmailing, under section 1926, R. S. 1881. The statute, so far as applicable to the present case, reads as follows:

" Whoever * * * knowingly sends * * * any letter * * with or without a name subscribed thereto, or signed with a fictitious name; * * accusing or threatening to accuse any person of any crime punishable by law, * * * with intent to extort or gain from such person any * * * money, * * * is guilty of blackmailing, and shall, on conviction thereof, be imprisoned in the State prison for not more than five years nor less than one year, to which may be added a fine not exceeding one thousand dollars."

The indictment was in two counts, differing in no material respect, and charging the appellant and Vedder with sending to one James B. Hart, who was also known by the name of " Can " Hart, a letter, with the fictitious name of John Stockdale subscribed thereto, falsely charging said Hart and one Philip Deter with the larceny of a whip, with intent to extort the sum of $5. A copy of the letter was set out in each count of the indictment, as follows:

" LAGRANGE, IND., July 28, 1883.

" Can Hart: You and Philip Deter *stoled* my whip last night. I will just give you ten days from this date to settle, or I will have you both arrested. You can settle by leaving five dollars in a letter at the post-office for me. My team was hitched at Ellison's bank. Address, John Stockdale, Lagrange, Ind."

Upon the plea of not guilty, the appellant was tried separately. The jury returned a verdict of guilty, assessing his punishment at imprisonment in the State prison for one year. Judgment was rendered upon the verdict. Motions were made by the appellant, at the proper time, to quash each count of the indictment, for a new trial, and in arrest of judgment. These motions were severally overruled, an exception was taken to each ruling, and said rulings are assigned for error in this court.

Counsel for the appellant make objections to each count of the indictment, upon the supposition that certain allega-

tions, deemed essential, are wanting. These, however, have been overlooked by counsel, for, as a matter of fact, they are found in each count. There was no error in overruling the motion to quash, or the motion in arrest of judgment.

There was evidence tending to show that the appellant, Vedder, Hart and Deter were quite intimate acquaintances and were upon friendly terms. On the day of the writing of the letter set out in the indictment, the appellant, on meeting Hart and Deter in Lagrange, was informed by them that some one had taken their whip, which was a good one, from their buggy, leaving in its place a piece of an old whip. They were trying to find the person that had taken their whip. Soon afterwards they were seen by the appellant and Vedder getting into their buggy and starting towards their home. The appellant then wrote the communication, copied in the indictment, and placed it in an envelope, directing it to Hart at Lagrange. He handed it to Vedder to be put in the post-office, which was done by the latter a few days afterwards. It was received by Hart at the postoffice. He procured at the postoffice a money order for $5, payable to " John Stockdale," and sent it, directed to that name, through the post-office. It was taken out by the appellant and Vedder. They procured the money on it from the postmaster by using the name, " John Stockdale." The appellant subsequently returned the money to Hart, but at what time or under what circumstances he did this is not shown in the evidence. The name, " John Stockdale," was fictitious, there being no person in the vicinity known by that name.

The theory of the defence was that the writing and sending of the letter were done merely in sport, with the view of having merriment at Hart's discomfiture on its receipt. There were circumstances in the case that gave plausibility to this theory. Persons who had known the appellant for years testified to his good reputation for honesty, and there was no evidence to the contrary. He lived in the same neighbor-

hood with Hart. They were familiar with each other and were friends.

At the trial the appellant proposed to testify in his own behalf, that a short time before sending the letter to Hart, several "rough jokes," as they are termed, the character of which are set out in the bill of exceptions, were perpetrated on him by Hart and Deter. The evidence, on the objection of the State, was excluded. In this there was error. The fact of Hart and Deter playing "rough jokes" on the appellant would not, of course, justify or excuse the writing of a letter with intent to extort money. But, as bearing upon the question of such intent, it was proper for the jury to know the previous relations of the parties—whether their intimacy and conduct towards each other had been such as to make it reasonable that the transaction upon which the indictment was based, was intended as nothing more than a jest. The gist of the offence charged in the indictment was the sending of the letter to Hart with intent to extort money from him. Unless such intent existed in the mind of the appellant at the time of sending the letter, there could be no crime. If the letter was sent merely in sport, to give annoyance, but with no intent to extort money, however reprehensible the act may have been, it would not constitute the offence of blackmailing. The jury should have had the benefit of all evidence bearing upon the question of intent. Some of the " rough jokes" which the appellant proposed to prove had been played upon him by Hart and Deter were quite as culpable as the sending of the letter complained of, if the sending of it was by way of joke and without intent to extort money. The evidence offered, but excluded by the court, would have given strength and probability to the defence relied upon by the appellant.

It is true that in criminal cases evidence of collateral matters is usually inadmissible. An exception to the rule exists, however, where such collateral matters bear upon the question of intent. Wharton Crim. Ev., section 46 ; Best Ev. 264,

Norris v. The State.

1 Greenl. Ev., section 54. To constitute a crime an evil intent must combine with an act. 1 Bishop Crim. L., sections 204, 285, *et seq.* In section 287, the learned author says: "The doctrine which requires an evil intent lies at the foundation of public justice. There is only one criterion by which the guilt of men is to be tested. It is whether the mind is criminal. Criminal law relates only to crime. And neither in philosophical speculation, nor in religious, or moral sentiment, would any people in any age allow, that a man should be deemed guilty unless his mind was so. It is therefore a principle of our legal system, as probably it is of every other, that the essence of an offence is the wrongful intent, without which it can not exist." In the absence of a felonious intent to extort money from Hart at the time of sending the letter, the appellant could not be guilty. If, without such intent, the letter was sent only for the mischievous purpose of annoyance, the crime charged would not be made out. The question of intent, in a criminal prosecution, is one of fact and often difficult to ascertain. The writing and sending of the letter set out in the indictment might, *prima facie,* import an intent to blackmail. Yet the circumstances under which it was written, and the previous relations of the parties, might be considered by the jury, either for the purpose of strengthening or rebutting the presumption of crime. The evidence offered by the appellant, and excluded by the court, would have tended to show that the letter was not sent with the intent to extort money. The evidence of the appellant's guilt as it comes to us in the record is far from conclusive. We can not say that, if the offered evidence had been admitted, a different result would not have been reached. The case does not, therefore, fall under section 1891, R. S. 1881, which requires this court to disregard technical errors which do not, in our opinion, prejudice the substantial rights of the defendant. The error in the record may have been vital and may have led to an improper conviction. The appellant's motion for a new trial should have been sustained.

Judgment reversed. The warden of the State prison in which the appellant is confined will cause him to be delivered to the jailor of the proper county, to abide the order of the court below.

Filed April 19, 1884.