Banks *v.* State.

## BANKS *v.* THE STATE.

[No. 19,599.    Filed June 26, 1901.]

BRIBERY.—*Attempt to Bribe Election Judge.—Information.*—In a prosecution for attempting to bribe one who had previously been designated as an election judge of a certain precinct, an information is defective which fails to state by whom the alleged election judge had been designated for appointment, or by what authority such designation had been made.  *pp. 191-198.*

CRIMINAL LAW.—*Bribery.—Evidence.—Res Gestae.—Intent.*—Where the theory of defense of one charged with an attempt to bribe an election judge to sell an official ballot was that the accused made the offer in pursuance of a prearranged plan to have such judge produce the ballot, and then have him arrested, the conversation between defendant and a third party in devising such plan is admissible in evidence as a part of the *res gestae,* and also for the purpose of rebutting the allegation of intent.  *pp. 198-205.*

From Marion Criminal Court; *Fremont Alford,* Judge.

From a conviction for attempting to bribe an election judge, defendant appeals.  *Reversed.*

*J. E. McCullough* and *J. J. Rochford,* for appellant.

*W. L. Taylor,* Attorney-General, and *J. C. Ruckelshaus,* for State.

Banks *v.* State.

Jordan, J.—Appellant was tried before a jury and convicted in the Marion Criminal Court on an affidavit and information which charged that he had attempted on November 5, 1900, to bribe one J. Wesley Bridges, who had been designated as an election judge to serve as such in precinct sixteen in the city of Indianapolis, at the general election to be held on the 6th day of November, 1900. His motion for a new trial was overruled, and upon the verdict of the jury the court sentenced him to be imprisoned in the Indiana state prison for an indeterminate period of time of from two to fourteen years, and adjudged that he be fined in the sum of $1, and disfranchised, etc. From this judgment he has appealed, and bases the errors of which he complains upon the rulings of the trial court, (1) in denying his motion to quash the affidavit and information, (2) in overruling his motion in arrest of judgment, and (3) in overruling his motion for a new trial. The information in its averments is the same as the affidavit, and, omitting the formal parts, is as follows: "John C. Ruckelshaus, prosecuting attorney of the nineteenth judicial circuit, who prosecutes the pleas of the State within and for the county of Marion, and State of Indiana, now informs the court that John Banks, on the 5th day of November, A. D. 1900, at and in the county of Marion, and State of Indiana, did then and there unlawfully, feloniously, and corruptly offer to one J. Wesley Bridges, who was then and there, and who had theretofore been designated as one of the election board of the sixteenth precinct of the first ward in the city of Indianapolis, in Marion county, and State of Indiana, to wit, one of the judges of said election board, at and for the general election to be then and there held for the election of State, county, and township officers at the general election to be held on the 6th day of November, A. D. 1900, with intent then and there to corrupt and influence him, the said J. Wesley Bridges, with respect to the discharge of his duties as such judge of said election board, he, the

said John Banks, then and there well knowing that the
said J. Wesley Bridges was then and there and had there-
tofore been designated as such judge of said election board,
the sum of $50, of the legal and current money of the
United States of America, for one of the ballots to be
used at said election in said precinct, and the said J. Wesley
Bridges was then and there and had theretofore been a resi-
dent householder in and of said sixteenth precinct of the
first ward of said city of Indianapolis for more than two
years next preceding said election on said 6th day of Novem-
ber, 1900, and who then and there was duly qualified to act
as such judge of said election board, and did, then and
there, unlawfully, feloniously, and corruptly offer to him,
the said J. Wesley Bridges, with intent then and there and
thereby to corrupt and influence him, the said J. Wesley
Bridges, with respect to the discharge of his duties as such
judge of said election board the sum of $50, of the legal and
current money of the United States of America, for such
ballot, the same to be then and there delivered to him, the
said John Banks, by the said J. Wesley Bridges on the 6th
day of November, 1900, after the opening of the polls of
said precinct at said election on said 6th day of November,
1900; the said ballot for which the said John Banks then
and there unlawfully, feloniously, and corruptly offered the
said sum of $50 to the said J. Wesley Bridges as aforesaid
was to be one of the legal and regular ballots delivered to the
inspector of said election board of said precinct, and to be
used and voted at said election in said precinct by the voters
thereof.   And the said John Banks then and there unlaw-
fully, feloniously, and corruptly offered the said sum of
$50, of the legal and current money of the United States of
America as aforesaid, to be then and there paid over to the
said J. Wesley Bridges by the said John Banks upon the
delivery of said ballot to him, the said John Banks, after
the opening of the polls at said precinct, on the said 6th day
of November, 1900, and which said ballot, for which said

Banks *v.* State.

sum of money was offered by the said John Banks to the said J. Wesley Bridges as aforesaid was to be removed by the said J. Wesley Bridges from the place where the said election was to be held in and for said precinct, contrary to the form of the statute," etc.

The prosecution is based on §105 of the criminal code, the same being §2097 Burns 1894, §2010 R. S. 1881 and Horner 1897, which reads as follows: "Whoever, with intent to corrupt a grand or petit juror, or a grand or petit jury, referee, master commissioner, arbitrator, umpire, commissioner to sell lands or make partition of lands, appraiser of real or personal property, county commissioner, mayor of a city, or member of a common council of any city, or trustee of any incorporated town, trustee of any civil or school township, or any inspector, judge, or clerk of election; or, to influence him or them with respect to the discharge of his or their duty, either before or after he or they are summoned, elected, appointed, qualified or sworn, promises or offers him or them any money or valuable thing    *    *    *    shall be imprisoned in the State prison," etc.

Counsel for appellant contend that the affidavit and information are fatally defective and insufficient for the reason, among others, that they do not disclose under whose or by what authority Bridges had been designated for the appointment of election judge to serve as such at said general election at the precinct mentioned in the information. By §4688 Horner 1897, §6200 Burns Supp. 1897, it is made the duty of an inspector of elections in his respective precinct, prior to the opening of the polls, to appoint two qualified electors of such precinct as judges of the election to be held therein. The section provides that such electors in order to be qualified to serve as judges in their precincts must have been "freeholders and resident householders therein for at least one year, or householders for at least two years next preceding such election, and who are members of differ-

ent political parties and of the parties which cast the highest number of votes in the State at the preceding general election: * * * Provided further, That if at least one week or more prior to such election the chairman of the county central committee of either of the two parties that cast the largest number of votes in the State at the last general election shall designate a member of such party as judge, having the same qualifications as above prescribed, he shall be appointed, and such judges, together with the inspector, shall constitute a board of election." This is the only provision of our election law which expressly provides for designating or making known for a week or more in advance of the election day the names of the persons who have been selected by the prescribed chairmen, to be presented to the inspector for the appointment as judges on the election board. If the chairman of the county central committee of either of the two specified political parties shall at least a week before the election day designate some qualified elector of the precinct who is a member of the same political party to which such chairman belongs, to serve as judge at said election, then, under such circumstances, it becomes the imperative duty of the election inspector of such precinct to appoint the person so designated as election judge, provided the person so designated is not disqualified by reason of his being a candidate to be voted for at said election, or because he is related to some candidate, or by reason of having something of value bet or wagered upon the result of the election, as prohibited by the above section. If, however, such designation is made, but not within the time fixed by the statute, the appointment of the person as judge then, under the circumstances, becomes a matter of discretion with the inspector, and the latter may or may not appoint the person so designated as he in his judgment may deem to be proper. Where the person duly qualified has been designated for judge under the authority and within the time provided by the statute, certainly then it may be assumed by all persons

Banks v. State.

having knowledge thereof that the inspector will discharge his duty by appointing the person as such judge who has been designated by the proper authority. If such designation is made, but not within the prescribed time, then, under such circumstances, there can be said to exist only a mere probability that the inspector will, in the exercise of his discretion, appoint the person so designated. The pleader in drafting the information in this case evidently had in mind the provision of the election law to which we have referred. The offense is charged to have been committed on November 5, 1900, which was the day immediately preceding the general election of that year. The pleading charges that Bridges "had theretofore been designated as one of the election board of the sixteenth precinct of the first ward in the city of Indianapolis, * * * to wit, one of the judges of said election board" for the general election to be held on the 6th day of November, 1900. It is further averred that at the time the accused offered the alleged bribe, he knew that Bridges "was then and there and had theretofore been designated as such judge of said election board." The information is entirely silent in respect either to the person by whom Bridges had been theretofore designated for the appointment of judge or under or by what authority such designation had been made. In regard to this feature of the case the pleading in no manner apprises the accused of what he will be required to meet on the trial in regard to such issue. For aught appearing to the contrary in the information Bridges, instead of being designated by the chairman of the county central committee of either the Republican party or Democrat party, which we judicially know are the two political parties that cast the largest number of votes in this State at the general election last preceding the one held on November 6, 1900, may have been designated by the county chairman of some political party other than those mentioned, or by some one who in no manner had any right or authority to nominate or designate him for such appointment. Aside

from the naked statement that he had been "theretofore" designated, there are no positive averments disclosing anything which may have caused the accused to assume or believe that there was even a probability of Bridges being appointed one of the election judges to serve as such on the election board at the precinct as specified. It does not appear that he had been designated either by the proper chairman or that he had in any manner been designated by the inspector in advance of the day of election for the appointment as election judge. There is an entire absence of facts to show that there was even a probability of his being appointed as judge on the election board at the election in question. The statute on which this prosecution rests makes it a public offense for any person to promise or offer to any judge of election either before or after his appointment, any money or thing of value, with the intent to corrupt or influence him with respect to the discharge of his official duty. Where the corrupt offer or promise is made before the appointment, it must be made to corrupt or influence such judge in the discharge of some one or more of the duties which will devolve upon him after his appointment as such official. One of the objects of the statute is to shield him from the evil efforts or attempts of the briber or corruptor from the very time it becomes known that there is even a probability of his appointment as such judge or that he may become invested with the discharge of the duties of the particular office. Where the corrupt offer or promise has been made for the purpose mentioned in the statute, the fact that the person attempted to be bribed fails to secure the appointment will not relieve the guilty party of the offense. Bridges may have been duly qualified as required by the statute to serve as election judge, and it may also be true that he had been theretofore designated, as alleged, still he may have been designated for the position by some unauthorized or incompetent person, for instance, by the county chairman of either the Prohibition party or the Populist party. Had

he been designated by the county chairman of either of the latter political parties, no one, under such circumstances, could assume or believe that there was a probability of the inspector violating the law and appointing him as one of the judges of the ensuing election.   The fact, under such cir-cumstances, that he had been designated by such incompe-tent or unauthorized person would certainly go to rebut the intent with which, as chárged, the particular bribe had been offered or promised.   Where the offense is committed after the appointment of the judge by the inspector, knowledge by the accused of his official character at the time the bribe was given, promised, or offered, is an essential element, which must be alleged and proved.   Bishop on Crim. Proc., §126; *Schmidt* v. *State,* 78 Ind. 41; *Pettibone* v. *United States,* 148 U. S. 197, 202, 13 Sup. Ct. 542, 37 L. Ed. 419; *United States* v. *Kessel,* 62 Fed. 57; *People* v. *Ward,* 110 Cal. 369, 42 Pac. 894; *Brown* v. *State,* 13 Tex. App. 358; *State* v. *Howard,* 66 Minn. 309, 68 N. W. 1096, 34 L. R. A. 178.   In fact, all the precedents or forms of indictment for bribing public officers or jurors, from Chitty to Bishop, contain positive and direct averments of the knowledge of the defendant in the "premises."   3 Chitty on Crim. Law 696; Bishop's Directions and Forms, §247.

If it is essential, where the offense is committed after the appointment or election of the particular officer, that knowl-edge of his official character at the time of its alleged com-mission should be imputed to the defendant, it is certainly material and important that where the crime is charged to have been committed before the appointment or election of the person to the position in controversy, that knowledge of the fact that he had been nominated or designated by com-petent authority should be imputed to the defendant at the time of the alleged commission of the offense.   For as pre-viously said it ought to be made to appear that the accused had reasonable grounds to believe or contemplate that there was at least a probability of the person whom he bribed, or

attempted to bribe, being elected or appointed to the particular office or position in controversy. The information in this case in regard to the particular point in question is so uncertain that it can not be determined what evidence would be admissible thereunder to establish the issuable fact that Bridges had been designated for the appointment of election judge, and, hence, did not sufficiently apprise appellant in this respect of what he might be. expected to meet at his trial. Where a criminal pleading is so uncertain or doubtful under its material averments as to be open to more than one construction it should be construed most strongly against the State, and all reasonable doubts arising from such averments ought to be solved in favor of the defendant.

The rule in regard to criminal pleading requires that the offense be positively charged, and not made to appear by the way of recitals or inferences. Nothing is to be gained by courts permitting a departure from well settled principles and lending their sanction to a loose and uncertain mode of pleading in criminal cases.

In *Funk* v. *State*, 149 Ind. 338, we said: "The doctrine so frequently asserted and adhered to by this court is that the particular crime with which the accused is charged must be preferred with such reasonable certainty by the essential averments in the pleading as will enable the court and jury to distinctly understand what is to be tried and determined, and fully inform the defendant of the particular charge which he is required to meet. The averments must be so clear and distinct that there may be no difficulty in determining what evidence is admissible thereunder." We conclude, therefore, for the reasons urged and stated herein, that the information is fatally defective. As to whether it is sufficient in other respects we do not decide. It follows that the court erred in overruling appellant's motion to quash the affidavit and information.

It is further contended that the court erred in excluding certain evidence offered in behalf of appellant. The latter,

while upon the witness stand, denied that he had in any manner attempted to bribe the prosecuting witness. He testified that he did not know that Bridges had been designated for election judge, or that he would be appointed as such. In fact the entire theory of appellant's defense was to the effect that he made the offer of the money in question to Bridges on November 5, 1900, at the time and upon the occasion when, as the latter testified upon the trial, the attempt to bribe him was made. That he offered to give the money to Bridges for the sole purpose of ascertaining whether the latter then had in his possession one of the ballots to be used at the coming election, and thereby induce him to show the ballot. He claimed that the money was not offered with the intent to influence Bridges in his conduct or duties after he became an election judge. The claim which appellant made while upon the stand as a witness in his own behalf was that, under an arrangement, he was only endeavoring to ascertain the fact as to whether Bridges had the ballot in his possession at the time, and if he had he was to be arrested for a violation of the election law. He testified that in a conversation which he had with Bridges on October 28, 1900, and also on November 4th following, that the latter informed him that he could obtain one of the ballots to be used at the election and have it ready to deliver to appellant on November 5th; that he went to Bridges' place of business in the city of Indianapolis on Monday morning, November 5th, to see if Bridges had the ballot, as the latter had promised to obtain it. Appellant further testified that in the first conversation which he had with Bridges, on October 28th, the latter said to him, that if he could deal with the right kind of people he was willing to make some money, and also said in the same conversation that "They got out some ballots at the city election before", and then said to appellant: "How much would you people be willing to give me for a ballot?" to which inquiry appellant replied that he did not know and could not say, that he would have

to see about the matter. On the night of October 28th, appellant testified that he again saw Bridges, and the latter inquired what he had done in respect to the proposition which he had made him about procuring a ballot, and appellant replied that he would let him know further, saying "I havn't had time to see my people." On the next day after the conversation which appellant had with Bridges on the 28th, he, as his evidence discloses, informed a Mr. Polster about the conversation which he had with Bridges in regard to the ballot, and on the same day he saw Mr. Thomas Taggart, who was the mayor of the city of Indianapolis, and reported to him in respect to the conversation which had occurred between him and Bridges on the 28th of October, and that he and the mayor, upon that occasion, talked over the matter. On being asked to tell or state what Mayor Taggart said to him on that occasion in regard to the matter the State objected. Thereupon Mr. McCullough, counsel for appellant, stated to the court what he proposed and expected to show by the witness in response to the question, the offer being as follows: "Mr. McCullough: I expect to show by the witness, in answer to the question, that Mayor Taggart said at that time in effect: 'Keep your ears open and listen to him and find out if he has got a ballot. If he has got a ballot, we will go after him and the ballot both very quick, and if it is necessary to have any money for the purpose of having him disclose the ballot I will furnish the money. I will see that the man is taken with the ballot in his possession if he has one; he has no business with a ballot.' I expect to follow this testimony of the witness by other evidence in the case showing that on the next Sunday the witness, Bridges, began talking to this man about the question of a ballot, and that on that night the fact was again communicated to Mayor Taggart, as well as to other officers, and that they went with the witness and told him that any money would be furnished that was necessary for the purpose of inducing Bridges to produce a ballot, if he had one, and it was in pursuance of

these directions that he was acting.  The Court:  The evidence of Mayor Taggart is hearsay evidence.  The only part that is competent is whether he received any direction from Mayor Taggart.  He may so state if he did; otherwise it is hearsay evidence.  Mr. McCullough:  I am asking whether he gave him any direction.  The Court:  You are asking him what he said, and the court sustains the objection.  You may ask whether Mayor Taggart gave him any direction. If he got any direction from Mayor Taggart he can answer yes or no."  To this ruling of the court in excluding this evidence appellant by counsel at the time excepted, and the ruling thereon is one of the reasons assigned in the motion for a new trial.

Mayor Taggart, who was called as a witness in behalf of appellant, testified that on Monday, October 29, 1900, appellant came to him and talked to him about what had previously occurred between him and Bridges, and in that conversation the witness stated that he informed or advised appellant what to do in respect to ascertaining if Bridges had a ballot.  Thereupon the witness was asked to state what was said by him to appellant in that conversation on that subject. The State interposed an objection, and counsel for appellant stated to the court what he expected to show and proposed to prove by the witness in response to the question as follows: "Mr. McCullough:  I expect the witness to answer that in that conversation he said to Banks, in substance, 'Keep your ears open, and listen to that man and find out if he has got a ballot.  If he has got a ballot, we will go after him and the ballot both very quick, and if necessary to have money for the purpose of having him disclose the ballot, I will furnish the money.  I will see that he is taken with the ballot in his possession if he has one.  He has no business with a ballot. You must not receive the ballot from him, but ascertain if he has one.'"  The court sustained the State's objection, and excluded the evidence offered, to which ruling appellant at the time excepted, and this ruling is also assigned as one of the reasons for a new trial.

The court also refused to permit the witness Taggart to testify that on the morning of November 5, 1900, he made the following statement in reference to the same matter between appellant and Bridges. The offer to prove being as follows: "Mr. McCullough: I expect to prove by the witness in answer to the question that he then and there said to Cramer in the presence of the defendant, Banks, that if that man, meaning Bridges, had a ballot, we want him, and we want him with it on his person, and then handed to Cramer $50, and told him that he, the Mayor, would have three men go up there where Banks was to meet Bridges; that is, another officer besides Cramer to go with Cramer and Banks; that the other officer would meet them at the court-house as they went by there; that when Banks got to where Bridges was, if it became necessary to get Bridges to show the ballot, he, Banks, should show Bridges the $50 with which he could buy it, but that Banks must not receive the ballot, that Bridges must be arrested with it on his person; that the three persons who were to go up there must arrange among themselves so that if Bridges produced or showed a ballot to Banks, he, Banks, should give a sign to him and the other officer and they must go at once and arrest Bridges with the ballot on his person."

It was the right of appellant to have the jury fully informed in regard to all of the facts and circumstances pertinent to the arrangement or scheme under and in pursuance of which he claimed to have acted in offering the money in question to Bridges. Such evidence would not only include what he himself did in respect to the matter, but, under the circumstances, it would embrace what Taggart told him or advised him to do after appellant had reported to him, as he stated he did, in reference to and in the furtherance of the arrangement or scheme by which Bridges was to be exposed and then arrested. As said, this was the scheme or arrangement under and in pursuance of which, as claimed by appellant, he thereafter acted in offering or promising the money

to Bridges on the occasion in controversy. The claim made by appellant in explanation of his action was to the effect that when he had ascertained that Bridges had in his possession on November 5th the ballot which he had promised to obtain or procure, that then, under said arrangement between him and Taggart, he was to give a certain signal to two policemen who would be stationed near by and that these officers thereupon were to arrest Bridges with the ballot in his possession. Appellant was certainly entitled fully to sustain or make plausible his theory of defense, and if the jury believed the evidence relating thereto to be true, or if they entertained a reasonable doubt of its truth, an acquittal of appellant would necessarily follow. For if there was a reasonable hypothesis disclosed by any evidence in the case which was consistent with the innocence of the accused, it was the duty of the jury to acquit him. *Green* v. *State,* 154 Ind. 655.

It was not the right of the court under the circumstances in this case to confine appellant to the mere statement that he had received directions or advice from Mayor Taggart in regard to the matter between him and Bridges, but he was entitled to show what Taggart said to him or in his presence in giving him the directions or advice in respect to what he should do when he met with Bridges upon the occasion in question. The facts which appellant offered to prove, but which were excluded by the court, were germane to the question involved. What was said by appellant and Taggart in making the arrangement in regard to the matter and in the furtherance thereof was a part of the *res gestae,* and such statements or declarations, under the circumstances, were proper to go to the jury to show the character of the transaction in all of its aspects. It is the right of a party in either a civil or criminal prosecution to endeavor to maintain his theory of the case, and for that purpose he should be permitted to give to the jury any and all competent evidence which tends to support the same; and where any evidence

has been introduced which tends to sustain such theory, it is also his right to have the jury fully advised upon the law in relation thereto by proper instructions. *Cleveland, etc., R. Co.* v. *Wynant,* 114 Ind. 525, 5 Am. St. 644, and authorities there cited. *Carpenter* v. *State,* 43 Ind. 371; *Grimes* v. *State,* 68 Ind. 193; *Norris* v. *State,* 95 Ind. 73, 48 Am. Rep. 700.

It was incumbent upon the State, among other things, to sustain beyond a reasonable doubt the intent with which appellant was charged to have offered the money to Bridges. It was consequently the right of appellant to endeavor to explain or rebut such intent upon any reasonable theory or claim, and the action of the court in excluding from the jury the evidence in dispute falls clearly within the rule asserted and enforced in *Grimes* v. *State,* 68 Ind. 193, and *Norris* v. *State,* 95 Ind. 73. In the first case last cited the defendant was indicted for larceny and the evidence established that he had borrowed the chattel alleged to have been stolen to take it to a certain place; that he had then gone to a different place and there sold the chattel and used the proceeds. It was held by the court in that case that it was competent for the defendant to prove, as bearing on his intent in borrowing the chattel, that he had previously arranged to go with another to such first mentioned place, and that he did not go there because of the fact that such other person was prevented by sickness from going with him. In the last case, *Norris* v. *State, supra,* the defendant was indicted for the crime of blackmailing, by sending a threatening letter to another to extort money. The theory of the defense was that the letter was sent as a joke, and there was an offer to prove that shortly before defendant sent the letter to the party in question that the latter had perpetrated several severe jokes upon him. His offer to prove these facts was denied, and on appeal this court held that the evidence was admissible upon the question of intent.

It must follow, from what we have said, that the trial

court erred in excluding the evidence offered. For the errors pointed out in this opinion, the judgment is reversed, and the cause is ordered to be remanded to the lower court with instructions to grant appellant a new trial and to sustain his motion to quash the affidavit and information. The clerk will issue the proper warrant for the return of the prisoner to the custody of the sheriff of Marion county.