JULES F. LaDURON *v.* STATE OF INDIANA.

[No. 2-1172A100. Filed July 31, 1973. Rehearing denied September 24, 1973. Transfer denied April 1, 1974.]

*Lapin & Koor,* of Muncie, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

HOFFMAN, C.J.—Dr. Jules F. LaDuron was tried by a jury which entered its verdict finding him "guilty of violation of the Indiana Dangerous Drug Act, to-wit: Sale as charged in the affidavit." The trial court entered judgment upon the verdict of the jury, and defendant, Jules F. LaDuron was sentenced to be committed to the Indiana State Farm for a term of 180 days and fined in the sum of $500. The timely motion to correct errors filed by LaDuron was overruled and this appeal followed.

The facts relevant to this appeal may be briefly summarized: A police informer, one Jules Vandelene, made four visits to the office of Dr. LaDuron between December 4, 1970, and December 11, 1970. Vandelene purchased in excess of twenty pills on each visit; a total purchase of over eighty

pills during a one week period. The pills contained amphetamine and barbituate. On each of the envelopes in which the pills were contained was written the dosage recommended by Dr. LaDuron to the effect "1 tablet 2 times a day."

The provisions of the Indiana Dangerous Drug Act which are pertinent to this appeal are IC 1971, 16-6-8-3, Ind. Ann. Stat. § 35-3333 (Burns Cum. Supp. 1972) and Acts 1961, ch. 45, § 4(5), p. 81 [Ind. Ann. Stat. § 35-3334 (Burns 1969)].[1]

Section 35-3333, *supra,* provides, in pertinent part, as follows:

"Acts prohibited.—The following acts, the failure to act as hereinafter set forth, and the causing of any such act or failure are hereby declared unlawful except as provided in IC 1971, 16-6-8-4 [§ 35-3334]:
"(a) The sale of any dangerous drug unless
\* \* \*
"(2) Such dangerous drug is delivered by a practitioner in good faith in the course of his practice and the immediate container in which such drug is delivered bears a label on which appears the directions for use of such drug; the name and address of such practitioner; the name of the patient; and, if such drug is prescribed for an animal, a statement of the species of the animal: Provided, nothing in this paragraph shall prohibit a practitioner from delivering professional samples of dangerous drugs in their original containers in the course of his practice when oral directions for use are given at the time of such delivery."

Section 35-3334, *supra,* is the substance of the first allegation of error raised by Dr. LaDuron and provides, in pertinent part, as follows:

"Exceptions.—The provisions of paragraphs A and C of section 3 [§ 35-3333] shall not be applicable (a) to the sale of dangerous drugs to persons included in any of the classes hereinafter named, or to the agents or employees of such persons, for use in the usual course of their business or practice or in the performance of their official duties as the case may be; or (b) to the possession of

1. Subsection (5) of Acts 1961, ch. 45, § 4, p. 81 was deleted by amendment in Acts 1972, P.L. 109, § 1, p. 592.

duties as the case may be; or (b) to the possession of dangerous drugs by such persons or their agents or employees for such use:

\* \* \*

"(5) Officers or employees of appropriate enforcement agencies of federal, state or local governments, pursuant to their duties in enforcing this act [§§ 35-3331—35-3339]."

Dr. LaDuron argues that the trial court erred in refusing to give defendant's tendered Instructions Nos. 1 and 2. Such instructions, had they been given, would have instructed the jury on the definition of "agency", and would have further instructed the jury that if they found an agency relationship to exist between the police and the informer, then LaDuron should be found not guilty.

Art. 1, § 19 of the Constitution of Indiana provides "[i]n all criminal cases whatever, the jury shall have the right to determine the law and the facts." Similarly, IC 1971, 35-1-35-1, Ind. Ann. Stat. § 9-1805 (Burns 1956), provides, in pertinent part, as follows:

"Fifth. The court must then charge the jury, which charge, upon the request of the prosecuting attorney, the defendant or his counsel made at any time before the commencement of the argument, shall be in writing and the instructions therein contained numbered and signed by the court. In charging the jury the court must state to them all matters of law which are necessary for their information in giving their verdict. If he present the facts of the case he must inform the jury that they are the exclusive judges of all questions of fact, and that they have a right, also, to determine the law."

The law of Indiana is long-standing that the purpose of instructions on the law in a criminal case "is to enlighten the judgment of the jurors, but not to bind their consciences. 8A I.L.E., *Criminal Law*, § 512, at 179.

In *Banks* v. *State* (1901), 157 Ind. 190, at 203-204, 60 N.E. 1087, at 1092, it is stated:

"It is the right of a party in either a civil or criminal prosecution to endeavor to maintain his theory of the case,

and for that purpose he should be permitted to give to the jury any and all competent evidence which tends to support the same; and where any evidence has been introduced which tends to sustain such theory, it is also his right to have the jury fully advised upon the law in relation thereto by proper instructions." (Citing authorities.) See also: *Eby* v. *State* (1905), 165 Ind. 112, 74 N.E. 890.

However, refusal of a tendered instruction is not error where such instruction is not supported by the evidence. *Bivins* v. *State* (1970), 254 Ind. 184, 258 N.E.2d 644. Also, error cannot be predicated on the refusal of a tendered instruction which incorrectly states the law. *Smith* v. *State* (1968), 250 Ind. 125, 235 N.E.2d 177.

The instruction tendered in the instant case told the jury that if they found an agency relationship to exist the defendant should be found not guilty. Even assuming Vandelene was an agent of the police, § 35-3334, *supra,* only makes the sale of a dangerous drug to the police lawful when such sale is for use in the performance of their official duties.

Here, there is no evidenec that the sale of the drugs by Dr. LaDuron was to an agent of the police *for use* in the performance of their duties. The drugs were ultimately used in the performance of the duties of the police—*i.e.,* to catch a potential lawbreaker. However, the evidence is uncontroverted that the sole purpose of the sale was for consumption. Instructions Nos. 1 and 2 tendered by Dr. LaDuron had no application to the evidence here presented. There was no error in their refusal.

Dr. LaDuron also contends,

"The trial court erred in denying Dr. LaDuron's motion to quash the amended affidavit, * * * in refusing to resolve the ambiguities in the Indiana Dangerous Drug Act, assuming ambiguities to exist, in favor of the accused, * * * in refusing to grant Dr. LaDuron's motions for directed verdict at the close of the State's evidence and at the close of all the evidence, [and] * * * in denying Dr. LaDuron's motion in arrest of judgment."

Paraphrased, the substance of such allegations is that under § 35-3333, *supra,* the sale of a dangerous drug by a physician is lawful unless there is proof of (1) bad faith, *and* (2) the container in which the drug is delivered is not properly labeled.

Appellant has misconstrued the language of § 35-3333, *supra.* Section 35-3333, *supra,* is clear and unambiguous. It provides that a sale of a dangerous drug is unlawful unless it is delivered by a practitioner in good faith in the course of his practice *and* the container in which the drug is delivered bears a label on which appears the directions for use of such drug. To be lawful a sale of a dangerous drug by a practitioner in the course of his practice must be made in good faith *and* in a properly labeled container. Conversely, a sale of a dangerous drug by a practitioner in the course of his practice is unlawful if not made in good faith *or* if the container is not properly labeled.

In the instant case, the State proved that Dr. LaDuron sold in excess of eighty tablets to one patient within the span of seven days. The containers in which the pills were sold were paper envelopes upon which Dr. LaDuron wrote the recommended dosage to be, "1 tablet 2 times a day." It is reasonably inferable from the foregoing evidence that the eighty pills were sold in bad faith. The conviction of Dr. LaDuron for violation of the Indiana Dangerous Drug Act is supported by sufficient, probative evidence.

In the same vein, we must reject LaDuron's contentions that there was no evidence that LaDuron exceeded the recommended dosage or had intent to violate the Indiana Dangerous Drug Act.

Dr. LaDuron himself recommended that this particular patient take one pill two times per day, a total of two pills

daily. Yet, LaDuron sold the same patient in excess of eighty pills within seven days. The inference of bad faith which emanates from the above evidence was one on which the jury could permissibly have based its verdict.

Dr. LaDuron contends that there was no evidence that the drugs purchased by Vandelene from LaDuron were dangerous drugs. IC 1971, 16-6-8-2, Ind. Ann. Stat. § 35-3332 (Burns Cum. Supp. 1972), defines a dangerous drug, among other drugs, as follows:

> "(j) (5) any drug appearing on the lists of drugs under schedules I, II, III and IV of the Controlled Substances Act, 21 U.S.C. sec. 812, Pub. L. no. 91-513, sec. 202 (c), and any drugs included therein by duly promulgated regulation; * * *"

In the instant case, the drugs in question contained barbiturates and amphetamines. Such drugs appear on the list of drugs under Schedule III of 21 U.S.C. § 812. The drugs sold by Dr. LaDuron to Vandelene were, as a matter of law, dangerous drugs.

LaDuron next contends that the trial court erred in failing to grant his second motion for change of venue from the county. The record before us shows that the first motion for change of venue from the county filed by LaDuron was granted, however, none of the surrounding counties were struck allegedly due to the failure of counsel for defendant to receive notice of such granting. A second motion for change of venue was filed by LaDuron. After a hearing upon such motion it was denied by the trial court.

The granting of a motion for change of venue from the county is discretionary with the trial court where the case is not one punishable by death. CR. 12, Ind. Rules of Procedure. It is incumbent on one alleging such error to show a clear abuse of discretion by the trial court. Appellant has not done so in the instant case.

Dr. LaDuron finally contends that State's Exhibits 1, 2, 3 and 4 were improperly admitted into evidence because the chain of possession was not established.

Having carefully reviewed the record before us we find sufficient evidence of the whereabouts of the evidence so as to exclude the danger of tampering, loss or mistake. See: *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652.

Finding no reversible error the judgment of the trial court convicting Dr. Jules F. LaDuron of violating the Indiana Dangerous Drug Act is affirmed.

Affirmed.

Sharp, J., concurs; Staton, J., concurs in result.

NOTE.—Reported at 299 N.E.2d 227.

## ON PETITION FOR REHEARING

HOFFMAN, C.J.—Defendant-appellant Jules F. LaDuron, in his petition for rehearing, has advanced the following argument:

"The decision relies on a statute that was not in effect when this case arose in December, 1970—*i.e.* § 35-3332(j)(5) as quoted in the decision.

"The decision relies on Schedule III of 21 USC § 812 to hold that the pills in question were dangerous drugs; but Schedule III of 21 USC § 812 was not incorporated into the Indiana Dangerous Drug Act until 1971. This case arose in December, 1970."

An examination of the opinion handed down by this court on July 31, 1973, to which LaDuron makes reference discloses that an amendatory Act was cited which was not in effect during December, 1970. Such Act was cited as IC 1971, 16-6-8-2, Ind. Ann. Stat. § 35-3332 (Burns Cum. Supp. 1972).

However, Acts 1969, ch. 225, § 2 (j) (5) which was in effect throughout 1970 was, at that time, applicable and reads as follows:

"J. 'Dangerous drug' means * * * (5) any drug appearing on the consolidated list of DACA drugs compiled in compliance with the drug abuse control amendments of 21 U.S.C., sec. 321, subsec. (v), P.L. 89-74, sec. 3(a), or any supplement thereof."

Accordingly, the drugs in question which contained barbiturates and amphetamines appear on the consolidated list of DACA drugs referred to by the statutory provision, quoted immediately above.

These statutory and argumentative substitutions do not render inaccurate the conclusion stated in the opinion of this court that "[t]he drugs sold by Dr. LaDuron to Vandelene were, as a matter of law, dangerous drugs."

LaDuron remains unaided by this error. With the exception of the above stated allegation of error, appellant's petition for rehearing is hereby denied.

Rehearing denied.

Sharp and Staton, JJ., concur.

NOTE.—Reported at 301 N.E.2d 521.